**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| ALFONSO J. LONGO and JANET LONGO, | CIVIL ACTION NO. 07-4372 (MLC) |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. |  |
| FIRST NATIONAL MORTGAGE SOURCES, et al., |  |
| Defendants. |  |

**COOPER, District Judge**

Plaintiffs, Alfonso J. Longo and Janet Longo ("plaintiffs"), allege violations of, <u>inter alia</u>, the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 <u>et seq.</u>, the New Jersey Home Ownership Security Act ("HOSA"), N.J.S.A. § 46:10B-22 <u>et seq.</u>, and the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. §§ 56:8-1 to -106. (Dkt. entry no. 1, Compl.; dkt. entry no. 44, Am. Compl.) Defendants First National Bank ("FNB") and Saxon Mortgage Services, Inc. ("Saxon") move separately for summary judgment in their favor pursuant to Federal Rule of Civil Procedure ("Rule") 56(c). (Dkt. entry no. 55, FNB Mot. for Summ. J.; dkt. entry no. 56, Saxon Mot. for Summ. J.) Plaintiffs have not opposed either motion for summary judgment. The Court determines the separate motions on briefs without an oral hearing, pursuant to Rule 78(b). The Court, for the reasons stated herein, will (1) grant

FNB's separate motion for summary judgment, and (2) grant Saxon's separate motion for summary judgment.

## BACKGROUND

Plaintiffs received a mail solicitation from New Century Mortgage ("New Century") on September 6, 2006 offering to refinance their home mortgage. (Dkt. entry no. 55, FNB Br. at 6.) Plaintiffs called the phone number provided and reached a broker employed by First National Mortgage Sources ("FNMS"). (Am. Compl. at 4.) The broker made certain representations to plaintiffs concerning closing costs, and plaintiffs proceeded with the loan application. (FNB Br. at 6.) The loan procured by FNMS was in the amount of $365,000. (Am. Compl. at 5.) On September 7, 2006, plaintiffs received loan application documents from New Century, some of which conflicted with representations made by the broker. (Id. at 5-6.) Plaintiffs contacted the broker, and were told they received incorrect paperwork and would be sent new paperwork. (Id. at 6.) Plaintiffs did not receive new paperwork and, prior to closing, did not receive a written mortgage commitment reflecting the loan terms. (Id.)

Plaintiffs met with a public notary on September 13, 2006 to sign the closing documents provided by the lender, New Century. (Id. at 7.) Plaintiffs signed most of the documents, but did not receive copies of the documents upon completion. (Id. at 7-8.) On September 28, 2006, plaintiffs received copies of some of the

2

closing documents from New Century, and discovered that their initials or signatures had been forged on several documents and that several documents were incorrect. (Id. at 8-9.) Plaintiffs ultimately received copies of all of the closing documents, as well as their loan application. (Id. at 9-10.) Upon review, plaintiffs noticed that their income as listed on the loan application had been inflated. (Id. at 10.) Plaintiffs did not qualify for the loan they received, and are not able to make timely payments on the loan. (Id.)

Plaintiffs brought this action against FNMS, U.S. Certified Signers, Lender's First Choice, FNB, Saxon, New Century, Michael Lefrenais, and David Lawrence seeking the right to rescind the mortgage, damages, and injunctive relief. (Id. at 1.) Plaintiffs' lone factual allegation against FNB is that FNMS is a subsidiary of FNB. (Id. at 3.) Plaintiffs allege that the loan at issue was ultimately assigned by New Century to Saxon. (Id. at 11.) FNB and Saxon now move separately for summary judgment. (FNB Mot. for Summ. J.; Saxon Mot. for Summ. J.) Plaintiffs have not opposed either motion for summary judgment.

Plaintiffs are represented by counsel in this action. (See dkt. entry no. 51, Not. of Appearance.) According to the docket, plaintiffs' counsel was notified when both motions for summary judgment were filed. (See dkt. entry no. 55 bullet entry, Notice of Electronic Filing (indicating that notice of FNB's motion for

summary judgment was electronically mailed to plaintiffs' counsel); dkt. entry no. 56 bullet entry, Notice of Electronic Filing (indicating that notice of Saxon's motion for summary judgment was electronically mailed to plaintiffs' counsel).) Further, both motions for summary judgment have been pending for over two months, and plaintiffs' counsel has an affirmative duty to monitor the docket on a regular basis.  (See FNB Mot. for Summ. J.; Saxon Mot. for Summ. J.)  See Kuhn v. Sulzer Orthopedics, Inc., 498 F.3d 365, 370-71 (6th Cir. 2007), cert. denied, 128 S. Ct. 655 (2007); Fox v. Am. Airlines, Inc., 389 F.3d 1291, 1294 (D.C. Cir. 2004).

## DISCUSSION

**I.   Legal Standards**

**A.   Standard of Review for Summary Judgment**

Rule 56(c) provides that summary judgment is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The summary judgment movant bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant must set out specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e)(2).  A non-movant

.

must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249. Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Id.</u> at 252. "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Id.</u> at 247-48. A fact is material only if it might affect the action's outcome under governing law. <u>Id.</u> at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

A movant is not automatically entitled to summary judgment simply because the non-movant does not oppose the motion. Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990). Instead, Rule 56(e) provides that the Court may grant the unopposed motion "if appropriate." Fed.R.Civ.P. 56(e); see also Anchorage Assocs., 922 F.2d at 175; Kadetsky v. Egg Harbor Twp. Bd. of Educ., 164 F.Supp.2d 425, 432 (D.N.J. 2001) ("Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless 'appropriate.'"). An unopposed motion is appropriately granted when the movant is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175.

"If the nonmoving party fails to oppose the motion [for summary judgment] by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Kadetsky, 164 F.Supp.2d at 431 (quotations and citations omitted). Further, even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Stasicky v.

S. Woods State Prison, No. 03-369, 2007 WL 1723467, at *6 (D.N.J. June 12, 2007) (alteration in original) (quotation and citation omitted).  Accordingly, when a plaintiff does not respond to a defendant's motion for summary judgment, the Court need only examine the pleadings and any evidence attached to the defendant's motion.  Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *2 (E.D. Pa. June 20, 2000), aff'd, 281 F.3d 218 (3d Cir. 2001).

**B.   Liability of a Parent Company**

A parent company is generally not liable for the acts of its subsidiary.  United States v. Bestfoods, 524 U.S. 51, 61 (1998); Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001).  The corporate veil may be pierced, however, and a parent company held liable for its subsidiary's conduct, to prevent fraud, illegality, or injustice, when recognition of the corporate form would defeat public policy or shield someone from criminal liability, or when the subsidiary is so dominated by the parent company that it does not have a separate existence. Pearson, 247 F.3d at 484; see also Bestfoods, 524 U.S. at 62. The Court must examine several factors in determining whether to pierce the corporate veil, including (1) gross undercapitalization, (2) failure to observe corporate formalities, (3) non-payment of dividends, (4) insolvency of the debtor corporation, (5) siphoning of funds from the debtor

7

corporation by the dominant stockholder, (6) non-functioning of officers and directors, (7) absence of corporate records, and (8) whether the corporation is merely a facade for the operations of the dominant stockholder.  Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 194 (3d Cir. 2003); Pearson, 247 F.3d at 484-85.  The party seeking to disregard the corporate form must prove by clear and convincing evidence that the corporate veil should be pierced. See Lutyk, 332 F.3d at 192, 197.  Piercing the corporate veil "is an exception reserved for extreme situations, rather than the rule."  Id. at 197; see also Portfolio Fin. Servicing Co. v. Sharemax.com, Inc., 334 F.Supp.2d 620, 627 (D.N.J. 2004).

    **C.**    **Truth In Lending Act**

The TILA defines "creditor" as

> a person who both (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f).  Further, a "servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation . . . unless the servicer is or was the owner of the obligation."  15 U.S.C. § 1641(f)(1); see also Ocasio v. Ocwen Loan Servicing, LLC, No. 07-5410, 2008 WL 2856392, at *2 (E.D. Pa. July 23, 2008) ("A loan

servicer is not liable under TILA."). Thus, generally, only creditors and assignees can be liable under the TILA for violative acts or omissions. <u>Hartman v. Deutsche Bank Nat'l Trust Co.</u>, No. 07-5407, 2008 WL 2996515, at *2 (E.D. Pa. Aug. 1, 2008).

### D.   New Jersey Home Ownership Security Act

To qualify as a "high-cost home loan" under the HOSA the principal amount of the home loan must not exceed a certain amount, and "the terms of the loan [must] meet or exceed one or more of the thresholds as defined in this section." N.J.S.A. § 46:10B-24. One such threshold is the "total points and fees threshold." <u>Id.</u> The total points and fees threshold means "that the total points and fees payable by the borrower at or before the loan closing, excluding either a conventional prepayment penalty or up to two bona fide discount points, exceed:(a) 4.5% of the total loan amount if the total loan amount is $40,000 or more." <u>Id.</u> The HOSA defines "total loan amount" as "the principal of the loan minus those points and fees . . . that are included in the principal amount of the loan." <u>Id.</u>

### E.   New Jersey Consumer Fraud Act

The CFA protects consumers from deception and fraud in the sale or advertisement of merchandise. <u>Turf Lawnmower Repair, Inc. v. Bergen Rec. Corp.</u>, 655 A.2d 417, 428 (N.J. 1995). The CFA provides:

9

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. § 56:8-2. The applicability of the CFA depends on the nature of the transaction. Papergraphics Int'l, Inc. v. Correa, 910 A.2d 625, 628 (N.J. App. Div. 2006).

## II. Legal Standards Applied Here

### A. Liability of a Parent Company

Plaintiffs do not allege that FNB directly engaged in any wrongful conduct associated with the loan at issue; rather, plaintiffs merely allege that FNMS is a subsidiary of FNB. (Am. Compl. at 3.) FNB argues that it owns an independent company, FNMS Home Loans, Inc., which, in turn, owns stock in FNMS. (FNB Br. at 5.) FNB further argues that it is entitled to summary judgment because plaintiffs have not produced evidence sufficient to justify piercing the corporate veil and holding FNB liable for acts of FNMS. (Id. at 14-15.)

The Court finds that summary judgment in FNB's favor is appropriate because there is no genuine issue of material fact, and FNB is entitled to judgment as a matter of law. FNB presented evidence that it was not involved in the origination or

processing of plaintiffs' loan. (Dkt. entry no. 55, Alan E. States Certification at 2.) Further, FNB has shown that its subsidiary is FNMS Home Loans, Inc., which owns 99% of FNMS. (Id. at 1-2.) Thus, FNB made a prima facie showing of its entitlement to summary judgment. See Pearson, 247 F.3d at 484-85. Plaintiffs have not produced any evidence in response, and, left with the mere allegation that FNMS is a subsidiary of FNB, have not raised a genuine issue of material fact. See Anderson, 477 U.S. at 249 (requiring the non-movant to present actual evidence raising a genuine issue of material fact and not allowing reliance on mere allegations); see also Warburton v. Foxtons, Inc., No. 04-2474, 2005 WL 1398512, at *8 (D.N.J. June 13, 2005) (granting defendant summary judgment on plaintiff's TILA claim where plaintiff sought to hold defendant liable for its subsidiary's actions and plaintiff's only showing was that defendant was the lender's parent company); Portfolio Fin. Servicing Co., 334 F.Supp.2d at 627 (stating that plaintiff will survive summary judgment by piercing the corporate veil only where "plaintiff alleges and proffers genuine and material facts from which a reasonable jury could find in plaintiff's favor and from which a conclusion could be drawn that the defendant abused its corporate structure for fraudulent, unjust or inequitable purposes"). Thus, the Court holds that entering summary judgment

11

in favor of FNB on plaintiffs' claims is "appropriate" here.  See Anchorage Assocs., 922 F.2d at 175.

**B.    Truth In Lending Act**

Plaintiffs allege that Saxon was assigned the loan at issue. (Am. Compl. at 3, 11.)  Saxon argues that it is entitled to summary judgment because it is merely a servicer of the loan, not a creditor or an assignee of the loan.  (Dkt. entry no. 56, Saxon Br. at 5-6; dkt. entry no. 58, John Cottrell Aff. at 1-2.)

The Court finds that summary judgment in Saxon's favor is appropriate because there is no genuine issue of material fact, and Saxon is entitled to judgment as a matter of law.  Saxon presented evidence that it is a servicer of the loan at issue, not a creditor or an assignee of the loan.  (John Cottrell Aff. at 1-2.)  Saxon began servicing the loan in February of 2007 for Deutsche Bank National Trust Company, which was assigned the loan in February of 2007.  (Id. at 2.)  Saxon was not involved in the origination of the loan.  (Id.)  Thus, Saxon made a prima facie showing of its entitlement to summary judgment. Celotex Corp., 477 U.S. at 323.  Plaintiffs have not produced any evidence in response, and, left with the mere allegation that Saxon is the assignee of the loan, have not raised a genuine issue of material fact.  See Anderson, 477 U.S. at 249 (requiring the non-movant to present actual evidence raising a genuine issue of material fact and not allowing reliance on mere allegations); see also Hartman,

12

2008 WL 2996515, at *2-*3 (dismissing plaintiff's TILA claim where defendant was only a servicer of the loan). Thus, the Court holds that entering summary judgment in favor of Saxon on plaintiffs' TILA claim is "appropriate" here. See Anchorage Assocs., 922 F.2d at 175.

### C. New Jersey Home Ownership Security Act

Plaintiffs allege that their loan satisfies the points and fees threshold of the HOSA. (See Am. Compl. at 15.) In making their calculations, plaintiffs rely on a good faith estimate provided by New Century on September 7, 2006. (Id. at 5.) According to plaintiffs' calculations, the points and fees on the good faith estimate exceed 4.5% of the $365,000 loan amount, thus satisfying the points and fees threshold. (Id. at 5, 15.) Saxon argues that it is entitled to summary judgment because plaintiffs do not satisfy the points and fees threshold, and therefore cannot show that the loan is a "high-cost home loan" under the HOSA. (Saxon Br. at 15-18.) Saxon asserts that plaintiffs improperly relied on a fee estimate in making their calculations, rather than on the amount of fees actually paid. (Id. at 16-17.)

The Court finds that summary judgment in Saxon's favor is appropriate because there is no genuine issue of material fact, and Saxon is entitled to judgment as a matter of law. Saxon showed that plaintiffs improperly relied on an estimate of fees in making their calculations, rather than the amount of fees

13

actually charged.  See N.J.S.A. § 46:10B-24 (defining the total points and fees threshold by reference to points and fees payable at or before closing).  Using the Itemization of Prepaid Finance Charges that plaintiffs signed at closing and the total loan amount as defined by the HOSA - rather than the principal loan amount as used by plaintiffs - Saxon showed that the loan does not satisfy the total points and fees threshold and therefore is not a "high-cost home loan" under the HOSA.  (Saxon Br. at 17.)  Thus, Saxon made a prima facie showing of its entitlement to summary judgment.  Celotex Corp., 477 U.S. at 323.  Plaintiffs have not produced any evidence in response and have not raised a genuine issue of material fact.  The Court therefore holds that entering summary judgment in favor of Saxon on plaintiffs' HOSA claim is "appropriate" here.  See Anchorage Assocs., 922 F.2d at 175.

     **D.   New Jersey Consumer Fraud Act**

Plaintiffs allege that Saxon "engaged in unconscionable commercial practice and material misrepresentation of the mortgage loan."  (Am. Compl. at 17.)  Plaintiffs further allege that Saxon accepted assignment of the loan despite blatant inconsistencies in plaintiffs' income documentation and plaintiffs' letters regarding the forgery and fraud that were part of New Century's loan file.  (Id.)  Also, plaintiffs assert that Saxon's HOSA violation is a per se violation of the CFA.

14

(Id.) Saxon argues that it is entitled to summary judgment because none of plaintiffs' allegations give rise to liability under the CFA. (Saxon Br. at 19-21.) Saxon asserts that it did not sell or advertise anything to plaintiffs; rather, Saxon merely acts as a servicer of the loan. (Id. at 19-20.) Thus, Saxon argues, the CFA does not apply. (Id.)

    The Court finds that summary judgment in Saxon's favor is appropriate because there is no genuine issue of material fact, and Saxon is entitled to judgment as a matter of law. Saxon presented evidence that it is a servicer of the loan at issue, and that it did not sell or advertise credit to the plaintiffs pertaining to this loan. (John Cottrell Aff. at 1-2.) Saxon's involvement as servicer of the loan began in February of 2007, several months after the loan originated. (Id. at 2.) Saxon was not involved in the origination of the loan. (Id.) Thus, Saxon made a prima facie showing of its entitlement to summary judgment. Celotex Corp., 477 U.S. at 323. Plaintiffs have not produced any evidence in response and have not raised a genuine issue of material fact. See Anderson, 477 U.S. at 249 (requiring the non-movant to present actual evidence raising a genuine issue of material fact and not allowing reliance on mere allegations); see also O'Loughlin v. Nat'l Cmty. Bank, 770 A.2d 1185, 1194 (N.J. App. Div. 2001) (finding no CFA violation where defendant did not sell the condominium units to plaintiffs or make promises

15

to the plaintiffs that were in any way connected to the sale of the condominium units). The Court therefore holds that entering summary judgment in favor of Saxon on plaintiffs' CFA claim is "appropriate" here.  See Anchorage Assocs., 922 F.2d at 175.

## CONCLUSION

The Court, for the reasons stated supra, will (1) grant FNB's separate motion for summary judgment, and (2) grant Saxon's separate motion for summary judgment. The Court will issue an appropriate order and judgment.

                                                          s/ Mary L. Cooper
                                                **MARY L. COOPER**
                                                United States District Judge

Dated: February 5, 2009