**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
ALFONSO J. LONGO and JANET    :
LONGO,                        :
                              :   CIVIL ACTION NO. 07-4372 (MLC)
      Plaintiffs,             :
                              :   MEMORANDUM OPINION
      v.                      :
                              :
FIRST NATIONAL MORTGAGE       :
SOURCES, et al.,              :
                              :
      Defendants.             :
                              :
```

**COOPER, District Judge**

The plaintiffs, Alfonso J. Longo and Janet Longo, allege
violations of, inter alia, the Truth in Lending Act ("TILA"), the
New Jersey Home Ownership Security Act ("HOSA"), and the New
Jersey Consumer Fraud Act ("CFA").  (Dkt. entry no. 1, Compl.;
dkt. entry no. 44, Am. Compl.)  The Court entered an Order and
Judgment granting summary judgment in favor of the defendants
First National Bank ("FNB") and Saxon Mortgage Services, Inc.
("Saxon") ("2-6-09 Order and Judgment") on February 6, 2009.
(Dkt. entry no. 61, 2-6-09 Order.)  The plaintiffs moved to
vacate the 2-6-09 Order and Judgment pursuant to Federal Rule of
Civil Procedure ("Rule") 60(b) on March 10, 2009.  (Dkt. entry
no. 62, Mot. to Vacate Summ. J.)  The Court vacated the 2-6-09
Order and Judgment, but ordered the plaintiffs to show cause why
it should not be reinstated.  (Dkt. entry no. 66, 9-15-09

Order.)[1]  The Court advised the plaintiffs that a failure to address the merits in responding to the Order to Show Cause would result in the reinstatement of the grant of summary judgment in favor of FNB and Saxon.  (Id.)  The plaintiffs, who now appear pro se, responded to the Order to Show Cause on October 26, 2009. (Dkt. entry no. 68, Pl. Resp.)  FNB and Saxon filed separate responses to the Order to Show Cause.  (Dkt. entry no. 71, Saxon Resp.; dkt. entry no. 72, FNB Resp.)  For the reasons stated herein, the Court will reinstate the grant of summary judgment in favor of Saxon only.

## BACKGROUND

The plaintiffs brought this action against First National Mortgage Sources ("FNMS"), U.S. Certified Signers, Lender's First Choice, FNB, Saxon, New Century Mortgage ("New Century"), Michael Lefrenais, and David Lawrence seeking the right to rescind their mortgage, damages, and injunctive relief.  (Am. Compl. at 1.) The plaintiffs received a mail solicitation from New Century on September 6, 2006 offering to refinance their home mortgage. (Dkt. entry no. 55, FNB Br. at 6.)  The plaintiffs called the phone number provided and reached a broker employed by FNMS. (Am. Compl. at 4.)  The broker made certain representations to

---

[1]The Court vacated the original grant of summary judgment because the plaintiffs' counsel failed to file opposition papers, the plaintiffs did not act in bad faith, and their counsel was suspended from the practice of law.  (9-15-09 Order.)

the plaintiffs concerning closing costs, and they proceeded with the loan application. (FNB Br. at 6.) The loan procured by FNMS was in the amount of $365,000. (Am. Compl. at 5.) The plaintiffs received loan application documents on September 7, 2006 from New Century, some of which conflicted with representations made by the broker. (Id. at 5-6.) They then contacted the broker, and were told they received incorrect paperwork and would be sent new paperwork. (Id. at 6.) The plaintiffs did not receive new paperwork and, prior to closing, did not receive a written mortgage commitment reflecting the loan terms. (Id.)

The plaintiffs met with a public notary on September 13, 2006 to sign the closing documents provided by the lender, New Century. (Id. at 7.) They signed most of the documents, but did not receive copies of the documents upon completion. (Id. at 7-8.) The plaintiffs received copies of some of the closing documents from New Century on September 28, 2006, and discovered that their initials or signatures had been forged on several documents and that several documents were incorrect. (Id. at 8-9.) The plaintiffs ultimately received copies of all of the closing documents, as well as their loan application. (Id. at 9-10.) Upon review, they noticed that their income as listed on the loan application had been inflated. (Id. at 10.) The plaintiffs did not qualify for the loan they received, and are

not able to make timely payments on the loan.  (Id.)  The
plaintiffs allege that FNMS is a subsidiary of FNB and that the
loan at issue was ultimately assigned by New Century to Saxon.
(Id. at 3, 11.)

## DISCUSSION

### I.   Motion for Summary Judgment

#### A.   Summary Judgment Standard

The standard for a motion for summary judgment is well-
settled and will be briefly summarized here.  Rule 56(c) provides
that summary judgment is proper if the pleadings, the discovery
and disclosure materials, and any affidavits show that there is
no genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In
making this determination, the Court must "view[] the record in
the light most favorable to the non-moving party and draw[] all
inferences in that party's favor."  United States ex rel.
Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009)
(citing Abramson v. William Patterson Coll., 260 F.3d 265, 276
(3d Cir. 2001)).

#### B.   Liability of a Parent Company

A parent company is generally not liable for the acts of its
subsidiary.  United States v. Bestfoods, 524 U.S. 51, 61 (1998);
Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir.
2001).  The corporate veil may be pierced, however, and a parent

company held liable for its subsidiary's conduct, to prevent fraud, illegality, or injustice, when recognition of the corporate form would defeat public policy or shield someone from criminal liability, or when the subsidiary is so dominated by the parent company that it does not have a separate existence. Pearson, 247 F.3d at 484; see also Bestfoods, 524 U.S. at 62. The Court must examine several factors in determining whether to pierce the corporate veil, including (1) gross undercapitalization, (2) failure to observe corporate formalities, (3) non-payment of dividends, (4) insolvency of the debtor corporation, (5) siphoning of funds from the debtor corporation by the dominant stockholder, (6) non-functioning of officers and directors, (7) absence of corporate records, and (8) whether the corporation is merely a facade for the operations of the dominant stockholder.  Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 194 (3d Cir. 2003); Pearson, 247 F.3d at 484-85.   The party seeking to disregard the corporate form must prove by clear and convincing evidence that the corporate veil should be pierced. See Trs. of the Nat'l Elevator Indus., 332 F.3d at 192, 197.

**C.   Truth In Lending Act**

The TILA defines "creditor" as

a person who both (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to

> whom the debt arising from the consumer credit
> transaction is initially payable on the face of the
> evidence of indebtedness or, if there is no such
> evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f).  Further, a "servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation . . . unless the servicer is or was the owner of the obligation."  15 U.S.C. § 1641(f)(1); see also Ocasio v. Ocwen Loan Servicing, LLC, No. 07-5410, 2008 WL 2856392, at *2 (E.D. Pa. July 23, 2008) ("A loan servicer is not liable under TILA.").  Thus, generally, only creditors and assignees can be liable under the TILA for violative acts or omissions.  Hartman v. Deutsche Bank Nat'l Trust Co., No. 07-5407, 2008 WL 2996515, at *2 (E.D. Pa. Aug. 1, 2008).

**D.  New Jersey Home Ownership Security Act**

To qualify as a "high-cost home loan" under the HOSA, the principal amount of the home loan must not exceed a certain amount, and "the terms of the loan [must] meet or exceed one or more of the thresholds as defined in this section."  N.J.S.A. § 46:10B-24.  One such threshold is the "total points and fees threshold."  Id.  The total points and fees threshold means "that the total points and fees payable by the borrower at or before the loan closing, excluding either a conventional prepayment penalty or up to two bona fide discount points, exceed: . . .

4.5% of the total loan amount if the total loan amount is $40,000 or more." Id.  The points and fees calculation excludes, inter alia, interest, title insurance premiums and fees, taxes, recording fees, and notary fees.  Id.  The HOSA defines "total loan amount" as "the principal of the loan minus those points and fees . . . that are included in the principal amount of the loan."  Id.

### E.  New Jersey Consumer Fraud Act

The CFA protects consumers from deception and fraud in the sale or advertisement of merchandise.  Turf Lawnmower Repair, Inc. v. Bergen Rec. Corp., 655 A.2d 417, 428 (N.J. 1995).  The CFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. § 56:8-2.  The applicability of the CFA depends on the nature of the transaction.  Papergraphics Int'l, Inc. v. Correa, 910 A.2d 625, 628 (N.J. App. Div. 2006).

## II.   Legal Standards Applied Here

### A.   Liability of a Parent Company

The Court originally granted summary judgment in favor of FNB because FNB presented evidence that it was not involved in the origination or processing of the loan at issue and the plaintiffs' mere allegation that FNMS was a subsidiary of FNB was insufficient to withstand summary judgment.  (Dkt. entry no. 60, 2-6-09 Op.)  FNB demonstrated that its subsidiary is FNMS Home Loans, Inc., which owns 99% of FNMS.  (Id.)

The plaintiffs, in responding to the Order to Show Cause, present several factual issues regarding the corporate structure of FNMS, thereby raising a genuine issue of material fact as to whether the corporate veil should be pierced.  The plaintiffs first allege that FNB received a set fee per loan through FNMS.  (Pl. Resp. at 11.)  The plaintiffs further allege that FNB's president Alan States ("States") manipulated the corporate structure of FNMS to shield FNB from liability.  (Id. at 12.)  The plaintiffs assert that on December 30, 2005, States incorporated FNMS Home Loans, Inc., elected himself as President, Secretary, and Treasurer of this entity, and issued 99% ownership of FNMS to FNMS Home Loans, Inc.  (Id. at 14-15.)  The plaintiffs allege that FNMS and FNB are not separate entities but are "one in the same."  (Pl. Resp. at 7; dkt. entry no. 55, Zipilli Cert., Ex. M., Pl. Resp. to Interrogs.)  They allege that States has

8

made inconsistent statements regarding the relationship between FNMS and FNB and these inconsistencies raise issues of fact. (Pl. Resp. at 8.)

The plaintiffs state that FNB was aware of the unsound lending practices of FNMS and failed to take any affirmative action to address these issues. (Id.) They further contend that States's claim that FNB was not involved with the processing of this loan is "fabrication." (Id. at 20.)

FNB asserts that its only connection with this case is its ownership of FNMS Home Loans, Inc., which owns stock in FNMS. (FNB Br. at 5.) FNB states that the plaintiffs failed to allege any facts indicating that FNB so dominated FNMS to justify piercing the corporate veil. (Id.) It states that FNB was not involved in, had no knowledge of, and did not assist in the loan at issue. (Id.)

The plaintiffs allege that FNMS's office was housed in FNB's office, States served as President, Secretary, and Treasurer of FNMS Home Loans, Inc., and Secretary of FNMS, and that FNMS's status and activity were discussed at FNB's Board of Directors' Meetings. (Pl. Resp. at 11, 12, 16.) The plaintiffs also present FNB Board of Directors' Meeting Minutes in which FNB discusses FNMS and the problems it was facing as an entity. (Id., Exs. 40, 53, 54.) The plaintiffs further note that FNB and FNMS are housed in the same building and that in January 2007

FNMS expanded to fill all of FNB's basement offices.  (Id. at 16, 18.)

States contends that while he did serve as President of FNB and also sat on FNMS's advisory board, there were five other members of this board who were in no way associated with FNB. (Dkt. entry 72, States Cert.)  States further stated in his certification that FNB is not responsible for hiring or firing of FNMS employees and that the two entities did not share common employees.  (Id.)  States also asserted that FNB was not involved in the day-to-day operations of FNMS.  (Id.)  The two entities were managed by separate individuals.  (Id.)  States further attested that the two entities maintain separate books, records and offices.

The Court finds that the plaintiffs have alleged facts sufficient to present a genuine issue of material fact as to whether the corporate veil should be pierced.  The plaintiffs' allegations of shared business location, shared board members, and oversight of FNMS create a fact question, and summary judgment cannot be granted on this point.

**B.   Truth In Lending Act**

The Court granted summary judgment in favor of Saxon on the TILA count because Saxon was a servicer of the loan at issue, not a creditor or an assignee of the loan.  (2-6-09 Op.)  The plaintiffs failed to contest Saxon's status as a servicer of the

loan.  The plaintiffs now allege that while Saxon asserts that it is not an assignee of the loan, it lacks proof other than a certification alleging this.  (Pl. Resp. at 29.)  The plaintiffs, however, offer nothing other than this assertion to demonstrate that Saxon was anything but a servicer of the loan.  This lone assertion is insufficient to defeat summary judgment.

### C.   New Jersey Home Ownership Security Act

The plaintiffs allege that their loan satisfies the points and fees threshold of the HOSA.  (Am. Compl. at 15.)  In making their calculations in the Amended Complaint, the plaintiffs relied on a good faith estimate provided by New Century on September 7, 2006.  (Id. at 5.)  The plaintiffs estimated that the points and fees on the good faith estimate exceeded 4.5% of the $365,000 loan amount, thus satisfying the points and fees threshold.  (Id. at 5, 15.)  The Court granted summary judgment in favor of Saxon on the HOSA count because it found that there was no genuine issue of material fact regarding the plaintiffs' failure to satisfy the points and fees threshold.  (2-6-09 Op.) Saxon demonstrated that the plaintiffs improperly relied on an estimate of fees in making their calculations to show that their loan is a "high-cost home loan," rather than the amount of fees actually charged.  (Id.)  The Court found that Saxon was able to demonstrate that the loan did not satisfy the total points and fees threshold and thus was not a high-cost home loan.

In responding to the Order to Show Cause, the plaintiffs allege that Saxon cannot demonstrate with any degree of certainty that the loan is not a high-cost home loan as they received two good faith estimates and three settlement statements all having different points and fees. (Pl. Resp. at 29.) Using these estimates and settlement statements, the plaintiffs estimate a points and fees amount they assert reaches the threshold. (Id. at 30.) The settlement statements and estimates that the plaintiffs point to, however, fail to raise a genuine issue of material fact as the points and fees on these documents do not exceed the HOSA points and fees threshold.

The plaintiffs state that they received two good faith estimates. (Pl. Resp. at 29.) The first estimate that the plaintiffs point to is dated September 7, 2006. (Pl. Resp., Ex. 13.) The total fees on this estimate fall below the HOSA points and fees threshold. The total fees on this estimate excluding interest equal $15,321.20. (Id.) The total loan amount as defined by HOSA is $365,000 minus the total fees. N.J.S.A. § 46:10B-24. The total loan amount according to this estimate would be $349,678.80. The HOSA points and fees threshold is 4.5% of the total loan amount. Id. The points and fees threshold here would be $15,735.55. The total fees on this estimate thus fall short of the threshold.

The plaintiffs do not specify which estimate is the second estimate they rely on.  The Court will assume that they are referring to the good faith estimate referenced in their Amended Complaint.  This good faith estimate is unsigned and dated September 6, 2006.  (Am. Compl., Ex. D.)   The total fees on this estimate excluding interest, title insurance, notary fees, recording fees, and taxes equal $14,271.80.  (Id.)  The total loan amount according to this estimate would be $350,728.20.  The points and fees threshold would thus be $15,782.77.  Thus, the total fees fall below the threshold and the fees on this estimate would not qualify the loan as a high-cost home loan.

The plaintiffs also state that they received three settlement statements, all of which contained different points and fees.  (Pl. Resp. at 29.)  The total fees of the first settlement statement excluding interest, title insurance, notary fees, recording fees, and taxes is $14,688.27.  (Id., Ex. 20.) The total loan amount according to this settlement would be $350,311.73.  The points and fees threshold would thus be $15,764.03.  The total fees of $14,688.27 fall below this threshold and thus the loan fails to meet the threshold under this settlement.

The total fees of the second settlement statement excluding interest, title insurance, notary fees, recording fees, and taxes equal $11,947.77.  (Id., Ex. 21.)   The total loan amount

13

according to this settlement would be $353,052.23.  The points and fees threshold would thus be $15,887.35.  The total fees thus fall below the threshold.

The total fees on the third settlement statement excluding interest, title insurance, notary fees, recording fees, and taxes also amount to $11,947.77.  The total loan amount is therefore also $353,052.23 and the points and fees threshold is $15,887.35. The total fees on this settlement statement also fall below the threshold.

The plaintiffs, in responding to the Order to Show Cause, present five different documents they allege demonstrate that their loan was a HOSA high-cost home loan.  (Pl. Resp. at 29.) These five documents, however, all contains fees less than the points and fees threshold.  As such, the plaintiffs fail to present a genuine issue of material fact as to whether their loan is a HOSA high-cost home loan.

### D.  New Jersey Consumer Fraud Act

The plaintiffs allege that Saxon "engaged in unconscionable commercial practice and material misrepresentation of the mortgage loan."  (Am. Compl. at 17.)  They further allege that Saxon accepted assignment of the loan despite blatant inconsistencies in plaintiffs' income documentation and plaintiffs' letters regarding the forgery and fraud that were part of New Century's loan file.  (Id.)  The plaintiffs also

assert that Saxon's HOSA violation is a per se violation of the
CFA.  (<u>Id.</u>)  Saxon argued that it was entitled to summary
judgment because the plaintiffs' allegations did not give rise to
liability under the CFA.  (Dkt. entry no. 56, Saxon Br. at 19-
21.)  Saxon asserted that it did not sell or advertise anything
to the plaintiffs, but only acted as a servicer of the loan.
(<u>Id.</u> at 19-20.)

The Court granted summary judgment in Saxon's favor because
Saxon presented evidence that it was a servicer of the loan and
did not sell or advertise credit to the plaintiffs pertaining to
this loan.  (2-6-09 Op.)  The Court found that Saxon was not
involved in the origination of the loan, and was thus entitled to
summary judgment.  (<u>Id.</u>)  In responding to the Order to Show
Cause, the plaintiffs still fail to present any evidence
demonstrating that Saxon was involved in the origination of the
loan, and as such, the Court will reinstate summary judgment in
favor of Saxon.

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, finds that the
plaintiffs have failed to demonstrate why the grant of summary
judgment in favor of Saxon should not be reinstated.  The Court
finds, however, that the plaintiffs have presented a genuine
issue of material fact regarding the reinstatement of summary
judgment in favor of FNB.  The Court will reinstate summary

15

judgment in favor of Saxon only.   The Court will issue an

appropriate order and judgment.

 

 

                                                                     __s/Mary L. Cooper_____

**MARY L. COOPER**
United States District Judge

Dated:   January 29, 2009